No. 24-2444

# In the United States Court of Appeals for the Seventh Circuit

B.D., a minor, by and through his guardian ad litem, Bryan Meyers,
*Plaintiff-Appellant,*

v.

Samsung SDI Co., Ltd.,
*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana
Case No. 2:22-cv-00107 (The Hon. Matthew P. Brookman)

## REPLY BRIEF OF PLAINTIFF-APPELLANT

| | |
|---|---|
| Robert T. Dassow<br>Hovde, Dassow & Deets<br>10201 N. Illinois Street, Suite. 500<br>Indianapolis, IN 46290<br>(317) 818-3100 | Jonathan E. Taylor<br>Gupta Wessler LLP<br>2001 K Street NW, Suite 850 North<br>Washington, DC 20006<br>(202) 888-1741<br>*jon@guptawessler.com* |

March 17, 2025                                                        *Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

Table of authorities ................................................................................................ ii

Argument .................................................................................................................. 1

Conclusion ............................................................................................................... 7

# TABLE OF AUTHORITIES

**Cases**

*Barone v. Rich Brothers Interstate Display Fireworks Co.*,
  25 F.3d 610 (8th Cir. 1994) ................................................................................5

*Bean Dredging Corp. v. Dredge Technology Corp.*,
  744 F.2d 1081 (5th Cir. 1984) ............................................................................5

*Curry v. Revolution Laboratories, LLC*,
  949 F.3d 385 (7th Cir. 2020) ............................................................................. 3

*Dehmlow v. Austin Fireworks*,
  963 F.2d 941 (7th Cir. 1992) ..............................................................................5

*Dilworth v. LG Chem, Ltd.*,
  355 So.3d 201 (Miss. 2022) ................................................................................5

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
  592 U.S. 351 (2021) .........................................................................................4, 7

*Jennings v. A/C Hyradulic A/S*,
  383 F.3d 546 (7th Cir. 2004) ............................................................................. 3

*LG Chem America, Inc. v. Morgan*,
  670 S.W.3d 341 (Tex. 2023) ...............................................................................5

*Plixer International, Inc. v. Scrutinizer GmbH*,
  905 F.3d 1 (1st Cir. 2018) .................................................................................. 3

*Sullivan v. LG Chem, Ltd.*,
  79 F.4th 651 (6th Cir. 2023) ...........................................................................5, 7

# ARGUMENT

Samsung does not deny that it sells and distributes hundreds of millions of 18650 batteries worldwide, including many millions to major U.S. companies that then pass them along to consumers in all 50 states. Nor does Samsung deny that it places no geographic limit on where its 18650 batteries may be sold. Indeed, Samsung concedes (at 20) that these batteries "are used to power a wide range of rechargeable consumer products, such as laptops, power drills, and electric vehicles," all of which are sold in Indiana. Samsung further concedes that this suit was brought in Indiana by an Indiana resident after he was injured by a Samsung 18650 battery in Indiana.

This appeal thus raises two different personal-jurisdiction issues based on these facts. The first is about purposeful availment: Viewing the record most favorably to the plaintiff, did Samsung know or expect—or should it have known or expected—that some of its 18650 batteries would reach Indiana? The second is about relatedness: If the answer to the first question is yes, does this suit sufficiently relate to Samsung's efforts to serve the Indiana market for 18650 batteries to allow the suit to proceed?

As B.D. explained in his opening brief, the first question has only one answer. *See* Op. Br. 24–31. *Of course* Samsung knew or expected, or at least *should have* known or expected, that some of its 18650 batteries would reach Indiana—if for no other reason than it knew or expected, or should have known or expected, that laptops, power drills, and electric vehicles are sold in Indiana.

Samsung does not, and cannot, argue otherwise. So it instead tries to change the question. It acts as if what matters for minimum contacts is whether it made *direct* sales to the forum state, or whether there is evidence that it expected its batteries to be sold and used in a certain way *within* the forum state. *See* Samsung Br. 35–37. But the whole point of the stream-of-commerce test is to cover companies that *indirectly* serve the forum state. Requiring direct sales would therefore be contrary to this Court's stream-of-commerce cases and make it especially difficult to sue component-part manufacturers. *See id.* at 12 n.2 ("SDI's argument is that where, as here, the defendant manufacturer has never sold or marketed the product to *any* consumers in the forum state"—true of nearly all component-part manufacturers—"the defendant cannot reasonably anticipate, as a result of its forum contacts, having to defend a lawsuit in that forum based upon a consumer's purchase and use of that product.").

As for Samsung's arguments about unauthorized activity within the forum state, they are at best arguments about relatedness—not minimum contacts. After all, if a Samsung 18650 battery in a laptop exploded as a result of a defect, seriously injuring an Indiana resident in Indiana, Samsung could not defeat jurisdiction by arguing that it had not formed the necessary minimum contacts with Indiana. The contacts that would serve as the basis of jurisdiction in that case are the same contacts that serve as the basis of jurisdiction in this case. Because they constitute purposeful availment there, they necessarily constitute purposeful availment here as well.

Samsung's arguments against purposeful availment are so weak that it cannot even muster a response to the authority stacked against it. B.D.'s opening brief cites 22 cases—nearly all appellate decisions, many of them binding—to establish that Samsung has formed minimum contacts with Indiana under this Circuit's stream-of-commerce test. *See* Op. Br. 24–31. Samsung does not engage with any of them. It entirely ignores 20 of the cases. *See* Samsung Br. 5 (no mention of any of them in its Table of Authorities). As for the other two, Samsung cites them only for uncontested propositions. *See id.* at 32 (citing a case quoting *Curry v. Revolution Labs., LLC*, 949 F.3d 385 (7th Cir. 2020), to show that there is a relatedness requirement); *id.* at 39 (citing *Jennings v. A/C Hyradulic A/S*, 383 F.3d 546 (7th Cir. 2004), to show that there must be minimum contacts with the forum state). Samsung's silence on this subject says all that there is to say about whether its position conforms to the governing case law.[1]

---

[1] Besides ignoring the relevant cases, Samsung makes several additional errors on purposeful availment. For example, it claims (at 37–38) that it does not matter that the company sold millions of 18650 batteries in the U.S. and made no attempt to restrict downstream sales to states other than Indiana. But Samsung's refusal "to implement such restrictions, coupled with its substantial U.S. business, provides an objective measure of its intent to serve customers in the U.S. market"—including Indiana—"and thereby profit." *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 9 (1st Cir. 2018). Samsung also claims (at 38–40) that its knowledge of standalone battery sales in vape shops—an independent basis for jurisdiction—is irrelevant because Samsung conducted its market investigation by purchasing batteries in Michigan, rather than Indiana. That misapprehends why this evidence is relevant: It shows that Samsung knew that its batteries were being sold to individual consumers throughout the U.S., including in Indiana. Samsung's decision to conduct the investigation in the first place underscores its knowledge of the vast extent of these sales, and there is no reason why it would have believed that these sales were confined to Michigan.

That leaves relatedness. Because Samsung has purposefully availed itself of the Indiana market with respect to 18650 batteries, and because the plaintiff in this case is an Indiana resident who was injured by a Samsung 18650 battery in Indiana, this case falls squarely within the rule articulated by the Supreme Court in *Ford*: When a company "serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 355 (2021).

Nevertheless, Samsung contends that, even if it serves the Indiana market for 18650 batteries, Indiana courts may not entertain this suit. It gives one reason why: because it sells its 18650 batteries for assembly into battery packs or finished products like "laptops, power drills, and electric vehicles." Samsung Br. 20. It does not sell them to "retailers or consumers," *id.* at 11, and does not authorize them to be sold as a "standalone product" to consumers, including for use in an e-cigarette device, *id.* at 19. Samsung therefore argues that the relevant market for its 18650 batteries is the market for their use as "component parts," *id.* at 6, 21, 36, 37, in products sold by "sophisticated manufacturing entities," *id.* at 11, 22, 36, 48, which do not include "e-cigarettes or vaping devices," *id.* at 23. *See also id.* at 8, 28, 33, 37, 38, 45. Having redefined the market in this way, Samsung declares that it is not covered by *Ford*'s rule and that the suit lacks sufficient connection to its contacts with Indiana.

But that is the very argument that the Texas Supreme Court unanimously rejected—at the urging of the Texas Solicitor General—in *LG Chem America, Inc. v. Morgan*, 670 S.W.3d 341, 348–51 (Tex. 2023). It is the very argument that the Mississippi Supreme Court unanimously rejected in *Dilworth v. LG Chem, Ltd.*, 355 So.3d 201, 208–09 (Miss. 2022). It is the very argument that the Sixth Circuit unanimously rejected in *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 671–74 (6th Cir. 2023). And it is an argument that is indistinguishable from one that has been rejected time and again, in cases holding that a foreign component-part manufacturer may be subjected to personal jurisdiction in a state despite never selling its products to retail consumers there. *See, e.g.*, *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 946 (7th Cir. 1992) ("reaffirming this Circuit's belief in the continued validity of *Gray v. American Radiator & Standard Sanitary Corp.*, [176 N.E.2d 761 (Ill. 1961)]," a seminal component-parts case); *Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 615 (8th Cir. 1994); *Bean Dredging Corp. v. Dredge Tech. Corp.*, 744 F.2d 1081, 1085 (5th Cir. 1984); *see also* Op. Br. 28–29, 35.

Here, too, Samsung has no response to any of these authorities. Samsung does not acknowledge the component-parts cases or attempt to reconcile its position with the settled view that components manufacturers may be sued when their products injure consumers in the forum state. And while Samsung tries to distinguish the decisions in *Sullivan*, *Morgan*, and *Dilworth*—decisions that represent the views of 20 appellate judges, including 17 state supreme court justices—it does so on the flimsiest

of grounds: because those cases involved a *different* manufacturer of 18650 batteries (Samsung's principal rival, fellow behemoth LG). Those cases matter not because of the identity of the defendant, but because their *reasoning* is equally applicable here.

Samsung's approach to these cases is indicative of its approach more broadly. In his opening brief (at 33–43), B.D. explained why Samsung's consumer-market and unauthorized-use arguments cannot be correct, and Samsung makes no effort to meaningfully respond to any of his points. Instead, it simply cites the cases that first came down on its side (including a case now on appeal to the Fifth Circuit, *see* Op. Br. 31 n.3; two intermediate state-court decisions, one of which did not even cite *Ford*; an unpublished district-court case; and a Ninth Circuit case that B.D. addressed in his opening brief, *id.*). *See* Samsung Br. 46–47. Those cases, however, predate *Morgan* and *Sullivan*. And, like Samsung itself, none of them grapples with the reasoning set forth in *Morgan* and *Sullivan* or with the arguments laid out in B.D.'s opening brief.

The closest Samsung comes to meaningfully engaging with B.D.'s points is in its discussion of *Ford*. Samsung argues that *Ford* offers no support for exercising jurisdiction here because, whereas Ford served a market for consumer purchases, Samsung "made *zero* effort to sell, distribute, or market its 18650 cells to consumers because *they are not consumer products*." Samsung Br. 45 (emphasis Samsung's). In other words: Whereas Ford intends for its cars to be driven by consumers in the forum state, Samsung intends for consumers in the forum state to use its batteries only to

6

power *some* small electronic devices (like power drills and laptops), not others (like e-cigarettes). But that argument presupposes that Samsung's consumer-market and unauthorized-use arguments are correct. They are not. *See* Op. Br. 33–43. As the Sixth Circuit put it: "This argument is misplaced and confuses the standard. The caselaw requires deliberate acts by the defendant to establish the minimum contacts required to demonstrate purposeful availment. But, when next looking for the requisite connection between the claims and the defendant's contacts under the second prong, our caselaw does not require that courts examine why that connection exists, so long as it sufficiently exists." *Sullivan*, 79 F.4th at 673 (cleaned up). Nor did the Supreme Court in *Ford* say that a defendant must serve a particular submarket within the state for its rule to apply. It said only that the defendant must serve "a market" for the product in the state. *Ford*, 592 U.S. at 355. Because Samsung has done that, and B.D. was injured by the product in Indiana, this case falls within *Ford*'s rule.

## CONCLUSION

This Court should reverse the decision of the district court.

Respectfully submitted,

*/s/ Jonathan E. Taylor*
JONATHAN E. TAYLOR
GUPTA WESSLER LLP
2001 K St. NW, Suite 850 North
Washington, DC 20006
(202) 888-1741
*jon@guptawessler.com*

|  | ROBERT T. DASSOW |
|---|---|
|  | HOVDE, DASSOW & DEETS |
|  | 10201 N. Illinois Street, Suite 500 |
|  | Indianapolis, IN 46290 |
|  | (317) 818-3100 |
| March 17, 2025 | *Counsel for Plaintiff-Appellant* |

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Circuit Rule 32(c) because this brief contains 1,911 words excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Baskerville font.

*/s/ Jonathan E. Taylor*
Jonathan E. Taylor

**CERTIFICATE OF SERVICE**

I hereby certify that on March 17, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Seventh Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Jonathan E. Taylor*
Jonathan E. Taylor